IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MURAKAMI-WOLF-SWENSON, INC.,                3:13-CV-01844-BR

      Plaintiff,                          OPINION AND ORDER

v.

LAWRENCE A. COLE,
individually and d/b/a
ACME-TV; MAGNUM PRODUCTIONS
LLC, an Oregon Domestic
Limited Liability Company;
and DOE 1 through DOE 100,
inclusive,

      Defendants.


MICHAEL M. RATOZA
Bullivant Houser Bailey, PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204
(503) 499-4695

BRIDGET B. HIRSCH
7435 Figueroa St.
No. 412422
Los Angeles, CA 90041
(323) 387-3413


1 - OPINION AND ORDER

**EVAN S. COHEN**
1180 South Beverly Drive
Suite 510
Los Angeles, CA 90035-1157
310-556-9800

       Attorneys for Plaintiff

**SCOTT N. BARBUR**
**JUSTIN R. STEFFEN**
Barbur Law Office, LLC
2027 S.E. Jefferson Street, Suite 205
Milwaukie, OR 97222
503-654-1773

       Attorneys for Defendants


**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion (#23) for Partial Summary Judgment on the Issue of Liability and Defendants' Cross-Motion (#29) for Summary Judgment.  The Court concludes the record is sufficiently developed such that oral argument would not be helpful.

For the reasons that follow, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendants' Cross-Motion.


<u>**BACKGROUND**</u>

In 1970 Murikami Wolf Productions, Inc., predecessor in interest to Plaintiff Murikami-Wolf-Swenson, Inc., created an audiovisual animated film produced for television entitled *The Point*.  *The Point* was broadcast on television by the American Broadcasting Company (ABC) in 1971.

2 - OPINION AND ORDER

In 1985 Plaintiff's licensee Vestron Video[1] released a videocassette recording of *The Point*.  The outside packaging of *The Point* videocassette and the label on *The Point* videocassette contained a copyright notice stating "© 1985 Murikami-Wolf-Swenson, Inc."  Suppl. Decl. of Evan Cohen, Ex. A at 2-3.

On January 22, 1987, Murikami Wolf Productions registered a copyright for *The Point* with the Register of Copyrights. Murikami Wolf Productions noted in its Copyright Registration that *The Point* was created in 1970 and listed the date "of first publication of this particular work" as February 11, 1970.[2] Compl., Ex. A at 1.

"At least as early as 2012" Defendant ACME-TV[3] offered for sale and sold copies of *The Point* on ACME-TV.com and through online retailers such as Amazon.com and eBay.  Defendants did not have a license or other authorization from Plaintiff to manufacture or to sell copies of *The Point*.

On October 16, 2013, Plaintiff filed an action in this Court against ACME-TV, Magnum Productions, and Lawrence Cole in which

---

[1] Vestron Video is not a party to this action.

[2] On May 28, 2014, Plaintiff filed a Supplemental Registration to the Copyright Office changing the date of first publication to 1985.

[3] ACME-TV was a division of Defendant Magnum Productions, LLC, before Magnum Productions dissolved in March 2013. Defendant Lawrence Cole operates, maintains, and controls ACME-TV.

Plaintiff asserts a claim against Defendants for willful copyright infringement in violation of 17 U.S.C. § 501. Plaintiff seeks damages and injunctive relief.

On April 24, 2014, Plaintiff filed a Motion for Partial Summary Judgment on the Issue of Liability. On May 14, 2014, Defendants filed a Cross-Motion for Summary Judgment. The Court took the Motions under advisement on June 21, 2014.

**STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence

4 - OPINION AND ORDER

is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.

## DISCUSSION

Plaintiff seeks summary judgment on the issue of liability and asserts Defendants manufactured and/or sold copies of *The Point* in violation of Plaintiff's copyright.  Defendants assert in their Response to Plaintiff's Motion and in their Cross-Motion for Summary Judgment that Plaintiff does not have a valid and enforceable copyright for *The Point*.  Specifically, Defendants assert the first published copy of *The Point* did not contain a proper copyright notice, and, therefore, Plaintiff does not have an enforceable copyright.

### I.   Copyright law

The Copyright Act gives the owner of a copyright the exclusive right to reproduce and to distribute publicly the copyrighted work.  17 U.S.C. § 106(1) and (3).  A person who violates those exclusive rights is an infringer.  17 U.S.C. § 501(a).  To establish a *prima facie* case of copyright infringement, a plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012)(quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006)).

### II.  Copyright Notice

Before the March 1, 1989, effective date of the Berne

6 - OPINION AND ORDER

Convention Implementation Act, omission of the form of copyright notice set out in the Copyright Act invalidated a copyright except in certain circumstances.  The notice required by the Copyright Act had to contain:  (1) the symbol ©, (2) the year of first publication of the work, and (3) the name of the owner of the copyright in the work.  17 U.S.C. §§ 401(b), 405.  Although the parties disagree whether *The Point* was first published in 1970/1971 or in 1985, the parties do not dispute that the form of notice set out in § 401(b) was required for Plaintiff to obtain a valid copyright registration under the Copyright Act in place at the time of any of those publication dates (1970, 1971, or 1985). The parties also do not appear to dispute that the copyright notice that appeared at the end of the 1971 broadcast of *The Point* on ABC did not meet the requirements of § 401(b).

Nevertheless, Plaintiff contends 17 U.S.C. § 405(a)(2)[4] operates to avoid invalidation of Plaintiff's copyright on *The Point* because the 1985 release of *The Point* on videocassette was the first publication of *The Point* and Plaintiff filed its copyright registration in 1987, which was within five years of the first publication of *The Point*.

Defendants, however, contend the 1971 television broadcast

---

[4] This Section provides in pertinent part:  "[T]he omission of the copyright notice . . . from copies . . . publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if . . . registration for the work . . . is made within five years after the publication."

was the first publication of *The Point*;[5] Plaintiff's 1987
copyright registration was not made within five years of the
first publication of *The Point*; and Plaintiff's copyright
registration, therefore, was invalid.  In addition, Defendant
also contends the copyright notice provided on the 1985
videocassette was insufficient, and, therefore, Plaintiff does
not have a valid copyright on *The Point*.

### A.    First Publication

The 1909 Copyright Act governed publication of a work
in 1971 rather than the 1976 Copyright Act.  The 1909 Copyright
Act did not contain a definition of "first publication."  Instead
"publication" was a term of art defined through various court
decisions.  *Nimmer on Copyright* sums up the relevant court
decisions and concludes in pertinent part:  "The relevant
decisions under [the 1909 Copyright Act] indicated that
publication occurred when, by consent of the copyright owner, the
original or tangible copies of a work are sold, leased, loaned,
given away, or otherwise made available to the general public."
*Nimmer on Copyright* § 4.03[A](citations omitted).  There is not
any indication on the record that Plaintiff sold, leased, loaned,
gave away, or otherwise made available to the general public the

---

[5] Defendants also assert 1970 was the date of first
publication because that date is noted on Plaintiff's 1987
Copyright Registration, but there is not any evidence in the
record of any publication or public distribution of *The Point*
before 1971.

original or copies of *The Point* before its release on
videocassette in 1985.

In addition, the 1976 Copyright Act provides "a public
performance or display of a work does not itself constitute
publication." The 1976 Act defines "to perform or display a work
publicly" to mean "to transmit or otherwise communicate a
performance or display of the work to . . . the public, by means
of any device or process, whether the members of the public
capable of receiving the performance or display receive it in the
same place or in separate places and at the same time or at
different times." 17 U.S.C. § 101. The definition in the 1976
Copyright Act "codifies the rule adopted by the courts under the
1909 Act." *Nimmer on Copyright* § 4.08[A](citations omitted).
Thus, the definition of "publication" under the 1909 Copyright
Act (as codified in the 1976 Copyright Act) does not encompass
the 1971 broadcast of *The Point* on television by ABC. In
addition,

> [s]ince the display of a copy does not constitute
> a publication of the work embodied therein, unless
> a copy is "publicly distributed," and not merely
> displayed, no notice need be placed upon it.
> Thus, . . . an ephemeral image, whether projected
> upon a theater screen, a television tube, or
> otherwise, does not constitute a copy, and hence a
> copyright notice is not required to appear upon
> such image.

*Nimmer on Copyright* § 7.06[A](citations omitted).

On this record the Court concludes the first

9 - OPINION AND ORDER

publication of *The Point* occurred in 1985 when it was first offered for sale on videocassette.  Because Plaintiff registered a copyright on *The Point* within five years of the first publication, it follows that, pursuant to 17 U.S.C. § 405(a)(2), Plaintiff's copyright registration is not invalid for failure to file a registration timely.

**B.   Sufficiency of the Copyright Notice on the 1985 Videocassette**

The record reflects Vestron Video affixed a copyright notice on the label of the 1985 videocassette and on the box that housed the videocassette:  "COPYRIGHT ©1985 MURAKAMI WOLF SWENSON, INC. ALL RIGHTS RESERVED."  Decl. of Evan Cohen, Ex. A.

Defendants, however, assert the copyright notice on the 1985 videocassette of *The Point* is insufficient because a copyright notice did not appear within the body of the film itself as required.

With respect to the placement of the copyright notice, the 1976 Copyright Act provides:  "The notice shall be affixed to the copies in such manner and location as to give reasonable notice of the claim of copyright."  17 U.S.C. § 401(c).  In addition 37 C.F.R. § 201.20(h) provides:

Motion pictures and other audiovisual works.

(1) The following constitute examples of acceptable methods of affixation and positions of the copyright notice on motion pictures and other audiovisual works:  A notice that is embodied in the copies by a

photomechanical or electronic process, in
such a position that it ordinarily would
appear whenever the work is performed in its
entirety, and that is located:

> (i) With or near the title;

> (ii) With the cast, credits, and similar
> information;

> (iii) At or immediately following the
> beginning of the work; or

> (iv) At or immediately preceding the end
> of the work.

* * *

(3) In the case of a motion picture or other
audiovisual work that is distributed to the
public for private use, the notice may be
affixed, in addition to the locations
specified in paragraph (h)(1) of this
section, on the housing or container, if it
is a permanent receptacle for the work.

As noted, Defendants assert this Regulation requires copyright

holders to "embody" a copyright notice into the film itself.

Defendants contend the language in Section (3) "in addition to

the locations specified in paragraph (1)(h)" means a copyright

holder may *also* place a registration notice on the housing or

container of the work, but merely placing a notice on the housing

or container is insufficient.  Plaintiff asserts the "in addition

to" language means a copyright holder may *either* embody the

copyright notice in the film itself or place a notice on the

housing or container in order to satisfy the notice requirement.

Neither party cites any case law to support their assertions.

*Columbia Pictures, Inc. v. Tucker*, is the only case the Court could find that evaluates the placement of copyright notices on videocassettes, and it supports Plaintiff's interpretation.  In *Columbia Pictures* the court held:

> In the instant case . . . notice of copyright for all of the seized videocassettes is positioned in accordance with subsection (h) of 37 C.F.R. § 201.20, and therefore in conformity with the requirements of § 401(c).  With respect to the six videocassettes which . . . contains [*sic*] copyright notice during the credits of each movie, the notice of copyright in these videocassettes . . . is in accordance with paragraph (h)(1) . . . .  As for the other videocassettes . . . these copies contain a notice of copyright positioned in accordance with paragraph (h)(3) which states that notice may be affixed "on the housing or container, if it is a permanent receptacle for the work."  37 C.F.R. § 201.20(h)(3). . . .  [Specifically,] the other videocassettes contain a notice of copyright "printed on a label located out of the videocassette itself."  As a result, these videocassettes contain a notice of copyright positioned in accordance with paragraph (h)(3) of § 201.20.

No. 94 CV 5542, 1997 WL 779093, at *9 (N.D. Ill. Dec. 11, 1997).  The Court agrees with the analysis and conclusion of the *Columbia Pictures* court.

The Court notes the Copyright Act specifically provides the "Register of Copyrights shall prescribe by regulation, as examples, specific methods of affixation and positions of the notice of various types of works that will satisfy this requirement, *but these specifications shall not be considered exhaustive*."  17 U.S.C. § 401(c)(emphasis added).  Similarly, the

12 – OPINION AND ORDER

regulations provide:

> This section specifies examples of methods of
> affixation and positions of the copyright notice
> on various types of works that will satisfy the
> notice requirement of section 401(c) of title 17
> of the United States Code, as amended by Pub.L.
> 94-553.  A notice considered "acceptable" under
> this regulation shall be considered to satisfy the
> requirement of that section that it be "affixed to
> the copies in such manner and location as to give
> reasonable notice of the claim of copyright."  As
> provided by that section, the examples specified
> in this regulation *shall not be considered
> exhaustive of methods of affixation and positions
> giving reasonable notice of the claim of
> copyright.*

37 C.F.R. § 201.20(g)(1)(emphasis added).  Accordingly, the

provisions of § 201.20(h) regarding placement of notices on

videocassettes are not mandates and do not encompass the only

ways in which a copyright holder can give reasonable notice of

its claim of copyright.  In fact, § 201.20(h) only provides

examples of possible methods of notice that comply with the

general requirement of § 401(c) that the copyright notice be

placed in such a manner as to give "reasonable notice of the

claim of copyright."  Thus, the Court concludes placement of the

proper copyright notice on both the videocassette itself and on

the box housing the videocassette was sufficient to give

reasonable notice of Plaintiff's claim of copyright in *The Point*.

The Court, therefore, concludes Plaintiff had an effective and

valid copyright on *The Point* at the time of its first publication

in 1985.

13 - OPINION AND ORDER

Accordingly, the Court grants Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability and denies Defendants' Cross-Motion for Summary Judgment.

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Plaintiff's Motion (#23) for Partial Summary Judgment on the Issue of Liability and **DENIES** Defendants' Cross-Motion (#29) for Summary Judgment.

The Court notes the case-management schedule (#20) it set on December 12, 2013, remains in effect.  If the parties anticipate any need to adjust the schedule, they should file **no later than August 29, 2014,** a joint status report addressing any scheduling issues.

IT IS SO ORDERED.

DATED this 13th day of August, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


14 - OPINION AND ORDER