IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MURAKAMI-WOLF-SWENSON, INC.,                3:13-CV-01844-BR

       Plaintiff,                       FINDINGS OF FACT,
                                            CONCLUSIONS OF LAW,
v.                                          AND VERDICT

LAWRENCE A. COLE,
individually and d/b/a
ACME-TV, and MAGNUM
PRODUCTIONS LLC, an Oregon
Domestic Limited Liability
Company,

       Defendants.


**MICHAEL M. RATOZA**
Bullivant Houser Bailey, PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204
(503) 499-4695

**BRIDGET B. HIRSCH**
7435 Figueroa St.
No. 412422
Los Angeles, CA 90041
(323) 387-3413


1 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

**EVAN S. COHEN**
1180 South Beverly Drive
Suite 510
Los Angeles, CA 90035-1157
310-556-9800

    Attorneys for Plaintiff

**SCOTT N. BARBUR**
**JUSTIN R. STEFFEN**
Barbur Law Office, LLC
2027 S.E. Jefferson Street, Suite 205
Milwaukie, OR 97222
(503) 654-1773

    Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court to resolve whether Defendants willfully infringed Plaintiff's copyright of an audiovisual animated film titled *The Point*. For the reasons explained herein, the Court concludes Plaintiff has proved Defendants willfully infringed Plaintiff's copyright and awards to Plaintiff statutory damages of $5,000.00 and reasonable and necessary attorneys' fees in an amount to be determined. The Court also directs the parties to make additional submissions as noted herein.

## BACKGROUND

The following facts are undisputed unless noted.

In 1970 Murakami Wolf Productions, Inc., predecessor in interest to Plaintiff Murakami-Wolf-Swenson, Inc., created an

2 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

audiovisual animated film produced for television titled *The Point*. *The Point,* narrated by Dustin Hoffman, was broadcast on television by the American Broadcasting Company (ABC) in 1971. *The Point* as narrated by Dustin Hoffman was never released for sale to the public.

In 1985 Vestron Video, Plaintiff's licensee, released for sale to the public a videocassette recording of *The Point* narrated by Ringo Starr. The 1985 release of *The Point* was identical to the 1971 broadcast except for the change in narrators.

On January 22, 1987, Murakami Wolf Productions registered a copyright for *The Point* with the Register of Copyrights. Murakami Wolf Productions noted in its Copyright Registration that *The Point* was created in 1970 and listed the date "of first publication of this particular work" as February 11, 1970.

In 1988 *The Point* was broadcast on television by the Disney Channel. Alan Thicke narrated the 1988 broadcast, but everything else about *The Point* was identical to both the 1971 broadcast and the 1985 videocassette release. Plaintiff never released or licensed for release to the public the 1988 broadcast version of *The Point*.

In 1993 LIVE Home Video, Inc., Plaintiff's licensee, released for sale to the public a videocassette recording of the 1985 version of *The Point* narrated by Ringo Starr. The 1993

3 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

release of *The Point* was identical to the 1985 videocassette release.

In 2004 Sony BMG, Plaintiff's licensee, released for sale to the public a digital video disc (DVD) recording of the 1985 version of *The Point* narrated by Ringo Starr.  The 2004 release of *The Point* was identical to the 1985 videocassette release.

As early as 2012 Defendant ACME-TV[1] offered for sale and sold DVD copies of *The Point* on Amazon.com and ACME-TV.com, which was run through eBay.com.  Defendants offered two versions of *The Point* for sale.  The first version was identical to the 1985 Ringo Starr version of *The Point*, and the second version was identical to the 1988 Alan Thicke version of *The Point*.

On October 16, 2013, Plaintiff filed an action in this Court against ACME-TV, Magnum Productions, and Lawrence Cole in which Plaintiff asserted a claim against Defendants for willful copyright infringement in violation of 17 U.S.C. § 501. Plaintiff sought damages and injunctive relief.

On April 24, 2014, Plaintiff filed a Motion for Partial Summary Judgment on the Issue of Liability.

On May 28, 2014, Plaintiff filed a Supplemental Registration to the Copyright Office changing the date of first publication of *The Point* to 1985.

---

[1] ACME-TV was a division of Defendant Magnum Productions LLC before Magnum Productions dissolved in March 2013.  Defendant Lawrence Cole operates, maintains, and controls ACME-TV.

4 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

On August 13, 2014, the Court issued an Opinion and Order in which it concluded Plaintiff had an effective and valid copyright of *The Point* at the time of its first publication in 1985 and that Defendants infringed Plaintiff's copyright of *The Point* when they sold and offered it for sale thereafter.

The remaining issue for trial is whether Defendants' infringement of Plaintiff's copyright was innocent or willful.

Plaintiff asserts Defendant willfully infringed Plaintiff's copyright when they manufactured, offered for sale, and sold unauthorized copies of *The Point*.  Plaintiff seeks damages of $50,000, a permanent injunction, and attorneys' fees.

Defendants, in turn, contend their manufacture, offer for sale, and sales of copies of *The Point* were innocent infringements rather than willful conduct as evidenced by the fact that, in their opinion, they adequately researched Plaintiff's copyright and they discontinued selling copies of *The Point* in July 2013 when Plaintiff advised them that their sales were infringing Plaintiff's copyright.

## FINDINGS OF FACT

On February 24, 2015, the Court conducted a one-day bench trial on the agreement of the parties.  The parties submitted exhibits into evidence and two witnesses testified:  Evan Cohen, Plaintiff's administrator of the copyright and film *The Point*,

5 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

and Defendant Lawrence Cole, co-owner and administrator of Defendant Magnum Productions LLC.

Having weighed, evaluated, and considered the evidence presented at trial, the Court makes the following Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a) by a preponderance of the evidence:

1. In 1985 Vestron Video widely distributed the Ringo Starr narrated version of *The Point* for sale on VHS throughout the United States, including in the State of Oregon.

2. Cole recorded the Disney Channel broadcast of *The Point* (with Alan Thicke as narrator) onto a videocassette when it was televised in 1988.

3. In 1993 LIVE Home Video, Inc., widely distributed the Ringo Starr narrated version of *The Point* for sale on VHS throughout the United States, including in the State of Oregon.

4. In 2004 Sony BMG widely distributed the Ringo Starr narrated version of *The Point* for sale on DVD throughout the United States, including in the State of Oregon.

5. In 2007 Cole and his wife started Magnum Productions LLC with the intention of finding movies that are in the public domain, restoring them, and selling them in

6 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

>    DVD and other formats at their physical store location in Milwaukie, Oregon, and online through Amazon.com and Defendants' website ACME-TV, which was run through eBay.com.

6.  Cole is not an attorney and does not have any formal training in copyright law.

7.  In 2008 or 2009 Defendants began to consider selling the 1988 version of *The Point* (narrated by Alan Thicke) in DVD format.

8.  In 2008 or 2009 Cole googled *The Point* and found the 1985 Ringo Starr version on VHS.

9.  When Cole googled *The Point* in 2008 or 2009, it is unlikely that he did not also find at least a passing reference to the 2004 Sony BMG DVD in light of its release in 2004.

10. In 2008 or 2009 Cole found parts or all of three versions of *The Point* on YouTube and concluded content that is protected by copyright is not on YouTube because he believed companies pull copyright-protected content off of YouTube right away.

11. In 2008 or 2009 in an effort to determine whether *The Point* was a work that was in the public domain, Cole noted the final frame of the 1988 version narrated by Alan Thicke that he had recorded off of the television

7 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

broadcast contained the following notice:

> A PRODUCTION OF
> NILSSON HOUSE MUSIC, INC.
> MURAKAMI WOLF
> PRODUCTIONS
> INC.
>
> ©"THE POINT" 1971 ALL RIGHTS RESERVED

12. In 2008 or 2009 Cole went to IMDb.com and saw a "release date" of February 2, 1971, for *The Point*.

13. In 2008 or 2009 Cole went to copyrightdata.com and corresponded with David Hayes, the owner of that website, concerning what Cole believed to be possible issues with the copyright notification contained at the end of the 1988 version of *The Point* taped off of the television.

14. Hayes is not an attorney, and Cole was aware when he corresponded with Hayes that Hayes was not an attorney.

15. Cole believed under his interpretation of copyright law that the copyright notice at the end of the 1988 version of *The Point* was invalid.

16. At some point before 2012 Defendants manufactured one of their versions of *The Point* by taking the video from YouTube and combining it with the audio from Cole's personal VHS recording of the 1988 Disney Channel broadcast of *The Point*. Defendants manufactured their other version of *The Point* by taking the audio and

        visual from YouTube resulting in a copy of the version narrated by Ringo Starr.

17. At least as early as 2012 Defendants began selling on Amazon.com and on their ACME-TV website their versions of *The Point* narrated by Alan Thicke and Ringo Starr.

18. In mid-2012 Cohen discovered Defendants' version of *The Point* narrated by Alan Thicke was for sale on Amazon.com.

19. On October 31, 2012, Cohen sent a "take-down" letter to Amazon.com's legal department in which he advised Amazon.com that it was offering for sale a "bootleg version" of *The Point* by ACME-TV. Cohen, however, included only the AISN number for Defendants' version of *The Point* narrated by Ringo Starr. Cohen advised Amazon.com that Defendants' DVD violated Plaintiff's copyright and requested Amazon.com to "delete" Defendants' DVD from Amazon's website.

20. Defendants did not receive a copy of Plaintiff's October 31, 2012, take-down letter, but at some point Amazon.com sent Cole a notice advising him that it had "taken down" the version of *The Point* narrated by Ringo Starr that was being sold by Defendants.

21. Defendants elected not to challenge Amazon.com's decision to take down Defendants' version of *The Point*

9 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

       narrated by Ringo Starr.

22. Cole believed Defendants' version of *The Point* narrated by Alan Thicke did not violate Plaintiff's copyright because the notice from Amazon.com did not mention that version. Defendants, therefore, continued to sell their version of *The Point* narrated by Alan Thicke.

23. Before July 2013 Cole never went to copyright.gov, which is the website administered by the United States Copyright Office, to research whether a valid copyright of *The Point* existed.

24. Before July 2013 Cole never accessed Amazon.com to review Defendants' listing for their version of *The Point*.

25. At some point before July 6, 2013, Cohen discovered Defendants were still selling their version of *The Point* narrated by Alan Thicke on their ACME-TV website.

26. At some point before July 6, 2013, Cohen ordered a copy of the DVD of *The Point* that Defendants were offering for sale on their ACME-TV website.

27. On July 6, 2013, Cohen received the copy of *The Point* DVD that he ordered, and he determined it contained an exact copy of the version of *The Point* narrated by Alan Thicke that was only broadcast on the Disney Channel in 1988.

10 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

28. The DVD cover included stills from *The Point*, contained a notation that it was manufactured and distributed by Magnum Productions LLC, and stated "Artwork and other material copyright 2010 by Magnum Productions LLC."

29. On July 9, 2013, Cohen sent Cole and Magnum Productions LLC a letter in which Cohen advised them that Defendants' sale of *The Point* constituted copyright infringement and directed Defendants immediately to cease and desist from selling or offering *The Point* for sale.

30. On July 9, 2013, Cole responded to Cohen's letter via email and argued to Cohen that he did not believe Defendants' version of *The Point* narrated by Alan Thicke violated Defendants' copyright.

31. On July 10, 2013, Cole advised Cohen via email that Defendants "removed [their] listing" of *The Point* pending Cole's further research on the issue.

32. Although Defendants did not also notify Amazon.com or eBay.com to remove their listing of *The Point*, Cole logged into his seller accounts on Amazon.com and ebay.com and "zeroed out the inventory" in order to remove any possibility of a sale through those accounts.

33. Due to difficulties with the company responsible for

11 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

      displaying videos on the website for ACME-TV, however, ACME-TV continued to display Defendants' version of *The Point* for sale.

34. After Cole received Plaintiff's July 9, 2013, letter, he checked copyright.gov for the first time.

35. Defendants did not sell any copies of *The Point* after July 10, 2013.

36. On September 6, 2013, Cohen discovered a link to purchase *The Point* on Defendants' ACME-TV website. Cohen did not click the link to determine whether it allowed for the actual purchase of the DVD.

37. By September 9, 2013, Defendants resolved their issues with their ACME-TV website, and the link for *The Point* became "a dead link."

38. It strains credulity that Defendants never looked at the listing on Amazon.com for their version of *The Point*.  The record reflects on October 31, 2012, the listing for Defendants' version of *The Point* also listed the officially-licensed DVD version of the movie released by Sony BMG in 2004.  If nothing else, this would have indicated to Defendants that *The Point* was, in fact, available on DVD and had been released by a large company that was likely licensed to do so.

## CONCLUSIONS OF LAW

Infringement is willful within the meaning of the Copyright Act when the defendant acts with the knowledge that the defendant's conduct constitutes copyright infringement or when the defendant acts with reckless disregard for the copyright holder's rights.  See *Barboza v. New Form, Inc.*, 545 F.3d 702, 708 (9th Cir. 2008).  See also *IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 1003 (N.D. Cal. 2010).

Based on the Court's Findings of Fact and the applicable legal standards, the Court concludes as a matter of law pursuant to Rule 52(a)(1) that Defendants willfully violated Plaintiff's copyright in *The Point* based on the following:

1. It was not reasonable and was in reckless disregard of Plaintiff's rights for Defendants to manufacture, to offer for sale, and to sell their version of *The Point* without checking the copyright-registration records of the United States Copyright Office to determine whether there was a copyright of *The Point*.

2. It was not reasonable and was in reckless disregard of Plaintiff's rights for Defendants to rely almost exclusively on the copyright notice in the last frame of the version of *The Point* broadcast on television in 1988 that was never intended for publication within the meaning of the Copyright Act and, therefore, did not

13 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

    require a copyright notice.  *See* pre-1989 17 U.S.C. § 405(a)(2)(requiring a copyright notice only on copies of a work "publicly distributed by authority of the copyright owner.").

3. It was not reasonable and was in reckless disregard of Plaintiff's rights for Defendants to conclude that *The Point* was in the public domain because versions of *The Point* were available on YouTube, which is for display, is not a distribution device, and is not an authoritative or reliable indicia of a video's copyright status.

4. It was not reasonable and was in reckless disregard of Plaintiff's rights for Defendants to fail to attempt to contact anyone mentioned in the copyright notice at the end of the 1988 broadcast of *The Point* to ascertain the status of the copyright of *The Point*.

5. It was unreasonable and was in reckless disregard of Plaintiff's rights for Defendants merely to "zero out" their inventory of *The Point* on Amazon.com and their website run through eBay after Cole was advised of the copyright status of *The Point* in July 2013.  Although zeroing out the inventory may have resulted in no further sales, Defendants' version, nevertheless, remained on the website (albeit with an apparently dead

14 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

    link) and continued to give the appearance of being offered for sale.

6. By entering into the business of finding movies that they believe to be in the public domain, manufacturing them on DVD, and releasing them for sale without the assistance of legal counsel or the benefit of a legal education, Defendants took obvious risks in disregard of copyright standards generally.  As a result Defendants reached incorrect legal conclusions in this instance about Plaintiff's copyright interests.  When Defendants manufactured, offered for sale, and sold their version of *The Point*, their conduct was unreasonable and in reckless disregard of Plaintiff's copyright interests.

### VERDICT

 For these reasons, the Court enters its **VERDICT** in favor of Plaintiff on the issue of willful infringement.

 The Court notes there is not any evidence in the record that Plaintiff sustained actual damages or that Defendants received any notable monetary profit from their infringement.  In the Ninth Circuit the purpose of a statutory damage award for copyright infringement is to penalize the infringer and to deter future violations of the copyright laws.  *See Nintendo of Am. v.*

15 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

*Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994).

Considering all of the evidence presented at trial, the nature of Plaintiff's copyright interest, and the circumstances of Defendants' infringement in the context of a relatively small business enterprise, the Court awards Plaintiff statutory damages in the amount of **$5,000.00**, a sum the Court concludes is sufficient to fulfill the purposes for statutory damages without being unduly punitive.

The Court also concludes a permanent injunction is appropriate and notes the parties have agreed to the terms of such an injunction in a March 3, 2015, email to the Court.  The Court will enter the permanent injunction under a separate Order.

In addition, the Court concludes pursuant to 17 U.S.C. § 505 that an award to Plaintiff of reasonable and necessary attorneys' fees and costs in an amount to be determined is appropriate in this case.  The Court **DIRECTS** the parties to confer concerning this issue in an effort to reach an agreement and to avoid incurring additional attorneys' fees to litigate this aspect of their dispute.

In the event the parties are unable to resolve the issue of attorneys' fees and costs by stipulation, the Court **DIRECTS** Plaintiff's counsel to submit **no later than April 3, 2015**, pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54-3 documentation and support for an award of attorneys'

16 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

fees in this matter.  Any opposition is due **April 20, 2015.**  The Court will take the issue under advisement on April 20, 2015.

Finally, the Court **DIRECTS** the parties to confer concerning an appropriate form of Judgment and to submit **no later than April 3, 2015**, their proposed form of Judgment for the Court's consideration.

IT IS SO ORDERED.

DATED this 18th day of March, 2015.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

17 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT